IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ATHENA ORTIZ,                            :   Civil No. 1:18-CV-456
                                         :
      Plaintiff                    :
                                         :
      v.                           :
                                         :
DELTA DENTAL OF                          :
PENNSYLVANIA, et al.,                    :
                                         :
      Defendants.                  :   Judge Sylvia H. Rambo

# M E M O R A N D U M

Before the court are Plaintiff Athena Ortiz's ("Ortiz") objections (Doc. 52) to the Report and Recommendation by Magistrate Judge Martin C. Carlson. (Doc. 51.) The Report and Recommendation recommends granting the motion for summary judgment (Doc. 36) filed by Defendants Delta Dental of Pennsylvania d/b/a Delta Dental and Delta Dental Insurance Company (collectively "Delta"). For the reasons set forth below, the Report and Recommendation will be adopted in full.

## I.    BACKGROUND

The court assumes the parties' familiarity with the material facts, recited in detail in the Report and Recommendation. In brief, Ortiz began working for Delta as a customer service representative in March 2015, where she worked on the night shift under supervisor Kurt Moffit. (Doc. 39-7, p. 40 of 256.) In that role, Ortiz was

1

evaluated based on her efficiency and the amount of time she spent answering calls versus the time she spent away from her desk. (*Id*., p. 41 of 256.)

In November 2015, Ortiz discovered she was pregnant and due in July 2016. (*Id*. pp. 9, 40, 64 of 256.) In January or February 2016, Ortiz was granted a transfer to the morning shift, where she began working under Shauna Michaels. (*Id*. p. 42 of 256.) After Ortiz told Michaels about her pregnancy, she learned that Michaels was planning a baby shower for her.  (*Id*. pp. 45, 49 of 256.)

Soon after beginning on the morning shift, Ortiz began experiencing symphysis pubis dysfunction ("SPD") related pain due to her pregnancy, which created stiffness, soreness, and discomfort in her pelvic region. (*Id*. p. 8 of 256.) The SPD pain made it difficult for Ortiz to sit for long periods of time. (*Id*.) Ortiz had previously experienced SPD during her prior pregnancies, and she found that walking around helped to alleviate the pain. (*Id*. pp. 9, 67, 86 of 256.) Ortiz also needed more frequent restroom breaks due to her pregnancy. (*Id*. pp. 8, 45 of 256.)

In March or April of 2016, Michaels had a discussion with Ortiz about spending too much time away from her desk, and Ortiz informed Michaels about her need for more frequent restroom breaks. (*Id*. p. 45 of 256.) Michaels explained to Ortiz that she would need to either use the restroom during one of her scheduled 15-minute breaks during the day or clock out and use unpaid FMLA leave. (*Id*. pp. 45-46 of 256.) Ortiz thereafter applied and was approved for intermittent FMLA leave

2

from April 1, 2016 until July 6, 2016, which she could use to take additional breaks throughout the day. (*Id*. p. 46, 213-14 of 256.)

On May 20, 2016, Ortiz claims she woke up with SPD pain and decided to use her intermittent FMLA leave to stay home from work. (Doc. 39-7, p. 67 of 256.) During her day off, Ortiz attended her children's field day event at school so that she could watch her children play and so that she could walk around to alleviate her pain. (*Id*. p. 68 of 256.) That night, Ortiz sent her friend and co-worker Amanda Miltenberger pictures of the event, accompanied by the message "this is what I did on my day off, shhhhh, lol." (*Id*. pp. 72-73, 78 of 256; Doc. 38-3 p. 35 of 53.) Ortiz also told Miltenberger that she was happy to have gotten sun, and Miltenburger responded that because "it was a gorgeous day, a lot of people played hookie in here." (Doc. 39-7, pp. 72, 73, 78 of 256.) Ortiz replied, "lol, I bet. It was a great day. I knew I was going to take off for a while now cause I knew it was their field day and I didn't want to miss it." (*Id*.)

On May 23, 2016, Miltenberger met with Delta's human resources department and showed them Ortiz's text messages. (See Doc. 38-3, pp. 35, 52 of 53.) Two days later, human resources met with Ortiz and questioned her about her day off. (Doc. 39-7, p. 67 of 256.) During the meeting, Ortiz admitted that she attended her children's field day but claimed that she had only done so after waking up with SPD pain and deciding to use FMLA leave that day. (*Id*. p. 68 of 256.) Ortiz also told

human resources that she went to a pregnancy center on day off, but that her visit was not related to her symptoms and was not due to a previously-scheduled appointment. (*Id.* pp. 68-70 of 256; Doc. 39-12, p. 24 of 108.) Ortiz also "denied sending a text message stating she planned for a while to go to [her children's field day]; when asked again at the end of the meeting, she said, 'not to her knowledge.'" (Doc. 39-12, p. 24 of 108.)

The next day, Ortiz had a follow-up meeting with human resources. After being shown the text messages, Ortiz told human resources that she remembered sending the photos to Miltenberger, but that she did not remember whether she sent the corresponding text messages. (Doc. 39-7, pp. 71, 76 of 256.) However, Ortiz subsequently refused to provide her copy of the text messages to Delta. (*Id.*, p. 74 of 256.)

At some point during the investigation, Ortiz was suspended without pay, pending its outcome, because Ortiz and Miltenberger worked in the same department and Ortiz would have known that Miltenberger provided human resources with the text messages, so there was an interest in not having them work together. (*See* Doc. 38-3, pp. 29, 45 of 53.) On June 2, 2016, Plaintiff was terminated for dishonesty and misusing FMLA time after human resources concluded that Ortiz was not willing to cooperate further with the investigation or provide Delta a legitimate reason for her day off. (*See* Doc. 39-7, pp. 75, 78 of 256; Doc. 38-3, p. 48 of 53.)

4

In February 2018, Ortiz filed the present action against Delta for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq*., the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"). (Doc. 1.) Ortiz asserts claims for discrimination, retaliation, hostile work environment, and failure to accommodate under Title VII, the ADA, the FMLA, and the PHRA. (*Id*.) The crux of the complaint is that Ortiz was terminated because of her disability and for exercising her rights under the FMLA.

In November 2019, Delta filed a motion for summary judgment on all of Ortiz's claims. (Doc. 36.) Upon the completion of briefing, the court referred the motion to Judge Carlson pursuant to 28 U.S.C. §636(b). (Doc. 50.) On March 6, 2020, Judge Carlson issued his Report and Recommendation recommending that Delta's motion for summary judgment be granted and the complaint be dismissed. (Doc. 51.) Ortiz filed timely objections, Delta responded, and Ortiz replied. (Docs. 52, 53, 55.) The matter is thus ripe for disposition.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of

law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the court must view the facts in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. 2548. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   **DISCUSSION**

### a. **The Report and Recommendation properly concludes that Delta is entitled to summary judgment on Ortiz's Title VII discrimination claim.**

The Report and Recommendation recommends dismissing Ortiz's Title VII discrimination claim. To establish a prima facie case of discrimination under Title VII, a plaintiff must show that (1) they are a member of a protected class (2) they were qualified for the position; (3) they suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013). If the plaintiff can make out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employee's treatment. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The burden then shifts back to the plaintiff to show that the non-discriminatory reasons

offered by the defendant "were not its true reasons, but were a pretext for discrimination." *Id.* at 252–53.

The Report and Recommendation finds that Ortiz has established a *prima facie* case of discrimination because at least some evidence indicates that her use of FMLA leave on May 20 was genuine. (Doc. 51, p. 21.) Ortiz woke up that morning in pain due to her qualifying condition, and while she had already planned to take the day off to attend her children's field day, she also recognized that she would need to move around to relieve the pain and that she would be unable to work. Nevertheless, Ortiz was terminated shortly thereafter. The Report and Recommendation finds that this evidence, viewed in the light most favorable to Ortiz, is sufficient to establish a prima facie case of discrimination. (*Id.*, p. 22.) The Report and Recommendation finds that Ortiz's Title VII discrimination claim should nonetheless be dismissed because Delta has put forward a legitimate, non-discrimination reason for its decision to terminate Ortiz—its "finding that her pre-planned day off, taken under the guise of FMLA leave, was deceptive and dishonest." (*Id.*)

Ortiz objects and argues that Delta was wrong in concluding that she acted deceptively. According to Ortiz, despite sending a text message to her colleague that she had been planning to take off for a while, she did not actually know "for sure" in advance that she would be taking off, and even if she did, she could have always

used a vacation day had she not woken up that morning with FMLA-qualifying pain. (Doc. 52, p. 8.) According to Ortiz, she thus did not deceive Delta since "[t]here is nothing dishonest about hoping to take a certain day off (such as by using vacation time) and then exercising FMLA rights after waking up in FMLA-qualifying pain that morning." (*Id.*, p. 9.)

This argument is unpersuasive and was properly rejected by the Report and Recommendation. It is not enough for Ortiz to offer an innocent explanation for her text messages and claim that Delta was wrong to conclude, on the basis of those messages, that she engaged in deception. As the Report and Recommendation repeatedly emphasizes, to show pretext Ortiz "cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d. Cir. 1994). Instead, Ortiz must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Delta's reason that a reasonable jury "could rationally find them unworthy of credence." *Id.*

Ortiz fails to show pretext here because there is no evidence indicating that Delta's proffered reason for terminating her is unworthy of credence. Regardless of whether Delta was ultimately correct to conclude that Ortiz engaged in deception, its review of Ortiz's text messages and subsequent investigation gave it reason to

believe she did. The text messages included photos of Ortiz's children's field day accompanied by messages including "this is what I did on my day off, shhhhh, lol" and "I knew I was going to take off for a while now cause I knew it was their field day and I didn't want to miss it." As the Report and Recommendation correctly finds, Delta consistently and plausibly relied on these messages in deciding to terminate Ortiz, and Ortiz provides no convincing reason or evidence to doubt that explanation. (*See* Doc. 39-12, p. 26; *infra*, III(c).) The court will therefore adopt the Report and Recommendation and dismiss Ortiz's Title VII discrimination claim.

### b. The Report and Recommendation properly concludes that Delta is entitled to summary judgment on Ortiz's Title VII retaliation claim.

The Report and Recommendation also recommends dismissing Ortiz's Title VII retaliation claim. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006) (internal quotation marks and citations omitted). With respect to the first element requiring a protected activity, "the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the

'opposition clause')." *Id.* at 341 (citing *Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)).

The Report and Recommendation finds that Ortiz's Title VII retaliation claim fails because she has not shown a protected activity. (Doc. 51, p. 25.) According to the Report and Recommendation, there is "no evidence that the plaintiff either participated in a Title VII lawsuit prior to the present one or opposed discrimination by her employer in terms more specific than a 'general complaint of unfair treatment' when her requests for accommodations were denied." (*Id.*, p. 26.) Ortiz objects and argues that she engaged in protected activity in Spring 2016 when she complained to human resources about her supervisor Shauna Michael's discriminatory treatment towards her. (Doc. 52, p. 11.)

Upon review of the record, the court agrees with the Report and Recommendation's finding that Ortiz did not engage in a relevant protected activity. The substantive deposition testimony that Ortiz points to in support of her objections does not show otherwise. Ortiz's deposition testimony instead indicates that Ortiz requested an accommodation for her pregnancy in the form of more frequent restroom breaks (*see* Doc. 39-7, pp. 46, 49 of 256) and told human resources that her supervisor "shouldn't be questioning" her need for more frequent restroom breaks. (*Id.* p. 48 of 256). As the Report and Recommendation correctly finds, such actions are not protected activities because at most, they do not extend beyond

11

generalized complaints of unfair treatment. The court will therefore adopt the Report

and Recommendation and dismiss Ortiz's Title VII retaliation claim.

### c. The Report and Recommendation properly concludes that Delta is entitled to summary judgment on Ortiz's ADA and PHRA discrimination claims.

The Report and Recommendation recommends dismissing Ortiz's ADA and

PHRA discrimination claims for the same reason as her Title VII claims. "[I]n order

for a plaintiff to establish a prima facie case of discrimination under the ADA, the

plaintiff must show: (1) [s]he is a disabled person within the meaning of the ADA;

(2) [s]he is otherwise qualified to perform the essential functions of the job, with or

without reasonable accommodations by the employer; and (3) [s]he has suffered an

otherwise adverse employment decision as a result of discrimination." *Taylor v.*

*Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). The claims are analyzed

under the McDonnel Douglas burden-shifting framework. *See McCarty v. Marple*

*Twp. Ambulance Corp.*, 869 F. Supp. 2d 638, 646 (E.D. Pa. 2012).

The Report and Recommendation finds that Ortiz has put forth sufficient

evidence to establish a *prima facie* case of discrimination in that she was disabled

during the relevant time period, qualified for her position, genuinely used FMLA

leave on May 20, 2016, and was nevertheless terminated due to her disability. (Doc.

51, pp. 28-29.) However, the Report and Recommendation also finds that Delta has

set forth a legitimate reason for terminating Ortiz—her deceptive conduct in taking

a pre-planned day off from work under the guise of FMLA leave. (*Id*. p. 30.) Delta's human resources department reviewed Ortiz's text messages to coworker that included (1) Ortiz's admission that she had been planning to take the day off for a while so that she could attend her children's field day, (2) photos of the field day, and (3) the message "this is what I did on my day off, shhhhh, lol." (*Id*.) Finally, the Report and Recommendation finds that Ortiz cannot show that Delta's proffered reason for her termination is pretext because the evidence shows that Defendants decision was driven by said misconduct, and "the fact that this deceitful plan may have accidentally ended up being legitimate does not change its basic mendacity." (*Id*., p. 31.)

Ortiz objects to the Report and Recommendation's finding that she has not shown pretext. Ortiz argues she has put forward evidence that she did not act dishonestly and that Delta knew as much insofar as: (1) she explained to Delta that she qualified for FMLA leave on May 20, 2016; (2) the human resources department declined to consider Ortiz's doctor's note; (3) Delta was "actively searching for cases" to build against her; and (4) Delta recommended suspended Ortiz without pay pending investigation. (*See* Doc. 52, n. 13.) Ortiz argues that from this evidence, a reasonable factfinder could disbelieve Delta's proffered reason for her termination.

The court disagrees that these facts show pretext and preclude summary judgment. Ortiz's first two arguments—that Delta should have accepted her doctor's

note and her explanations for why she qualified for FMLA leave on May 20, 2016—essentially ask this court to find that Delta's decision was incorrect. Delta considered Ortiz's offer to provide a doctor's note but reasonably concluded that one would not disprove Ortiz's alleged misuse of FMLA time. (*See* Doc. 39-12, p. 24 of 108.) Similarly, Delta's finding that Ortiz was dishonest and misused FMLA time is not unworthy of credence just because it declined to accept Ortiz's explanations for her conduct over the import of her text messages that indicated that she did misuse FMLA time.

Ortiz's assertion that Delta was "actively searching for cases" against her is also unavailing. This argument is based on the final sentence of an internal Delta email sent by its Human Resources Business Partner Jennifer Raup. The email summarizes in detail the meeting between Ortiz and human resources in which Ortiz was confronted about her suspected misuse of FMLA time. During that meeting, it appears Ortiz falsely "denied sending a text message stating she had planned for a while to go to [her children's field day]." (Doc. 39-12, p. 24 of 108.) The email's final paragraph, which discusses potential next steps for the investigation, reads as follows:

> Please let me know if anything else should be investigated - is it worth revealing the text messages in order to gain [Ortiz's] response to the legitimacy or intent of them? Before putting the reporting employee out there, I'd prefer your preliminary opinion on whether it will make a difference on taking any action. Or do we potentially have a case for lying about sending the text messages?

14

(*Id.*)

The court does not believe that this email creates an issue of fact as to whether Delta's reason for terminating Ortiz was pretext. The correspondence shows that Raup's question about whether Delta potentially "ha[d] a case" against Ortiz for lying came in the context of determining whether "anything else should be investigated" in light of, among other things, Ortiz's apparent dishonesty in the meeting. Delta's proffered reason for terminating Ortiz, her apparent misuse of FMLA time, does not become unworthy of credence just because a human resources employee queried whether Ortiz's apparent dishonesty in connection with the investigation was also punishable. In isolation, the language in the final sentence of the email—"do we potentially have a case"—might indeed sound like Delta was actively searching for cases against Ortiz. However, in the context of Delta's open investigation and Ortiz's then-recent dishonesty, as well as the surrounding language in the email indicating Delta's interest in conducting a fair investigation, it means little and is insufficient to create a triable issue of fact as to whether Delta's reason for Ortiz's termination as pretext.

Finally, Ortiz's unpaid suspension does not support her argument that Delta's proffered reason for her termination was pretext. The record shows that after Ortiz's colleague came forward with the text messages, Delta made the decision to suspend Ortiz pending completion of its investigation, since the employee that reported the

text messages worked in Ortiz's same department and Delta of course knew that Ortiz would be aware of who the reporting employee was. (*See* Doc. 38-3, p. 45 of 53.) Ortiz provides no substantive reason for why this decision shows that Delta's reason for her termination was pretext or otherwise saves her discrimination claims.

### d. The Report and Recommendation properly concludes that Delta is entitled to summary judgment on Ortiz's ADA and PHRA retaliation claims.

The Report and Recommendation recommends granting Delta's motion for summary judgment and dismissing Ortiz's ADA and PHRA retaliation claim. "In order to establish a *prima facie* case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Philadelphia Housing Authority Police Dept.*, 380 F.3d 751, 759 (3d Cir. 2004) (internal quotation marks, brackets and citations omitted). ADA and PHRA claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *See id.* at 760 n.3.

The Report and Recommendation finds that Ortiz engaged in a protected activity when she requested additional fifteen-minute breaks throughout the work day, but that she has nevertheless failed to show any causally connected adverse employment action. (Doc. 51, p. 35.) Ortiz objects and argues that Delta also took

adverse employment actions against her by subjecting her to a hostile work environment, suspending her without pay, and terminating her employment. However, Ortiz fails to show that she was in fact subject to a hostile work environment. (*See infra*, § 3(f).) She instead complains only generally about being "watched" at work and feeling singled out, which are not adverse employment actions under the ADA and PHRA, particularly given the absence of any concrete facts in support. Moreover, Ortiz has not shown any causal connection whatsoever between her requesting additional breaks and being suspended or terminated; the record does not support that those events were linked. The Report and Recommendation therefore correctly concludes that Ortiz has not shown any adverse employment action that was causally connected to a protected activity, and that Delta is entitled to summary judgment on Ortiz's ADA and PHRA retaliation claims.

### e. The Report and Recommendation properly concludes that Delta is entitled to summary judgment on Ortiz's failure to accommodate claim.

The Report and Recommendation also recommends granting Delta's motion for summary judgment and dismissing Ortiz's ADA failure to accommodate claim. To succeed on a failure to accommodate claim, the employee must prove that "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the

employee could have been reasonably accommodated but for the employer's lack of good faith." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010).

The Report and Recommendation finds that "the record belies the plaintiff's assertions that she was denied reasonable accommodations and that Delta failed to engage in the interactive process." (Doc. 51, p. 37.) According to the Report and Recommendation, the evidence shows that Ortiz requested an additional two 15-minute breaks, and that Delta counter-offered her the option of splitting her two existing 15-minute breaks into six 5-minute breaks, or alternatively clocking out and using unpaid intermittent FMLA leave throughout the day together with her two 15-minute breaks. (*Id.*, pp. 37-38.) According to the Report and Recommendation, the record shows that Delta offered Ortiz two reasonable accommodation options to meet the needs of her request, and Ortiz thus cannot show that Delta failed to offer her a reasonable accommodation. (*Id.*, pp. 38-39.)

Ortiz objects and argues that Delta "has not carried its burden of demonstrating…that the accommodation that Plaintiff requested created an undue burden." She claims that if Delta wanted to reject her request, "it would have needed to show undue burden." (Doc 52, p. 16.)

Though it is true that an employer can avoid liability for failure to accommodate by showing that the proposed accommodation creates an undue burden, "[a]n employer is not obligated to provide an employee the accommodation

18

he requests or prefers, the employer need only provide some reasonable accommodation." *Yovtcheva v. City of Philadelphia Water Dept.*, 518 F. App'x 116, 122 (3d Cir.2013) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996)); *see Solomon v. Sch. Dist. of Philadelphia*, 532 F. App'x 154, 158 (3d Cir. 2013) ("Although an employer has a duty to offer a reasonable accommodation to a qualified employee, "an employee cannot make [the] employer provide a specific accommodation if another reasonable accommodation is instead provided.'") (quoting *Hankins v. The Gap, Inc.,* 84 F.3d 797, 800–01 (6th Cir.1996)). Courts in this circuit have repeatedly followed this rule. *See Moore v. CVS Rx Servs., Inc.,* 142 F. Supp. 3d 321, 341 (M.D. Pa. 2015), *aff'd*, 660 F. App'x 149 (3d Cir. 2016); *Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 242 (E.D. Pa. 2014).

As the Report and Recommendation correctly finds, the evidence shows that Delta engaged in the interactive process in good faith and offered Ortiz multiple reasonable options to meet the needs of her request. Ortiz therefore fails to show any issue of fact as to whether Delta made a good faith effort in assisting her in seeking accommodations, and Delta is entitled to summary judgment on this claim.

**f.   The   Report   and   Recommendation   correctly
concludes   that   Delta   is   entitled   to   summary
judgment   on   Ortiz's   hostile   work   environment
claim.**

The   Report   and   Recommendation   recommends   dismissing   Ortiz's   hostile

work   environment   claim.   To   establish   a   claim   for   hostile   work   environment,   a

plaintiff   must   establish   that   "he   suffered   intentional   discrimination   because   of   his

disability;   the   discrimination   was   'sufficiently   severe   or   pervasive   to   alter   the

conditions   of   his   employment   and   create   an   abusive   working   environment';   the

discrimination   detrimentally   affected   him;   and   it   would   have   detrimentally   affected

a   reasonable   person   in   his   position."   *Mercer v. Se. Pa. Transit Auth.*, 26 F. Supp. 3d

432, 443 (E.D. Pa. 2014) (brackets omitted) (quoting *Walton v. Mental Health Ass'n

of Se. Pa.,* 168 F.3d 661, 667 (3d Cir. 1999)).

The   Report   and   Recommendation   finds   that   Ortiz's   hostile   work   environment

claim   fails   because   she   has   not   produced   any   evidence,   other   than   her   own   subjective

beliefs   about   being   singled   out   and   constantly   under   watch,   that   she   was   ever

subjected   to   an   abusive   working   environment. (Doc. 51, pp. 40-41.)   According   to

the   Report   and   Recommendation, Ortiz   does   not   allege   that   her   supervisor   ever   made

any   inappropriate   comments   or   took   any   improper   actions   to   treat   her   differently

than   her   colleagues   because   of   her   pregnancy, associated   disability, or   gender, and

there   no   evidence   that   Ortiz's   supervisors   engaged   in   conduct   so   severe   or   pervasive

so   to   alter   the   conditions   of   her   employment. (*Id.*)

Ortiz objects and argues that she "has produced ample evidence that she was singled out (as the only pregnant and disabled employee reporting to Michaels), treated differently and worse than similarly-situated coworkers, and that the conduct was severe, pervasive and extremely upsetting." (Doc. 52, p. 16.) Specifically, Ortiz argues that she was baselessly denied a reasonable accommodation, micromanaged, threatened with corrective action unless she stopped using the restroom so much, singled out with false criticism, and attacked during evaluations. (*Id.*, pp. 16-17.)

Upon review of the record, the court agrees with the Report and Recommendation's finding that Ortiz has not shown evidence that she was subjected to discrimination or an abusive working environment, let alone that which was so severe or pervasive so to actually alter the conditions of her employment. As discussed above and in the Report and Recommendation, Ortiz was not baselessly denied a reasonable accommodation. The record does not support that Ortiz was threatened against using the restroom, but rather that Delta offered her multiple reasonable options for accommodating her needs. (*See* Doc. 39-7, pp. 46, 60 of 256; Doc. 51, pp. 4-5, 37-38.) Moreover, Ortiz's deposition testimony makes clear that her claims about being micromanaged, singled out, and attacked during evaluations are all based solely on her subjective beliefs and not articulable facts or evidence to support those beliefs. (*See* Doc. 39-7, pp. 45-47, 84 of 256.) The Report and

21

Recommendation therefore correctly finds that no reasonable jury could find for Ortiz on this claim.

### g. The Report and Recommendation properly concludes that Delta is entitled to summary judgment on her FMLA claim.

The Report and Recommendation recommends finding that Defendants are entitled to summary judgment on Ortiz's FMLA retaliation claim. "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). Where, as here, the claim is based on circumstantial evidence, it is analyzed under the *McDonnell Douglas* burden-shifting standard. *Id.*

The Report and Recommendation finds that Ortiz's FMLA claim should be dismissed for the same reason as her other retaliation claims. It finds that Ortiz has put forth sufficient evidence to establish a *prima facie* case of retaliation in that she took FMLA leave due to her disability and was terminated days later, but that Delta has nevertheless proffered a legitimate reason for Ortiz's termination—her alleged *misuse* of that FMLA time through her pre-planned absence. (Doc. 51, pp. 45-46.) The Report and Recommendation further finds that Ortiz has not shown pretext because even if she did legitimately need to use FMLA leave that day, her

substantive arguments merely call into question the soundness of Delta's decision and do not create an issue of fact as to whether Delta actually terminated Ortiz for her dishonesty and misuse of FMLA. (*Id.*, p. 46.)

Ortiz objects and argues, as with her other claims, that there is sufficient evidence that Delta was not only wrong in concluding that Ortiz had engaged in deception, but in fact knew that she had done nothing wrong.[1] However, as discussed above, the record does not support that Delta knew that Ortiz was innocent of misusing FMLA time. Even viewing the facts in a light most favorable to Ortiz, Delta certainly could have concluded from its review of Ortiz's text messages and subsequent investigation that she intended to or did misuse FMLA time. Regardless of whether Delta's determination was in fact correct, the record is clear that Ortiz's termination was not tied to her use of FMLA time, but to her apparent *misuse* of that time. Further, as with Ortiz's ADA and PHRA discrimination claims, Ortiz's assertions that Delta's decision was wrong and failed to sufficiently credit her explanations for her conduct is insufficient to show that Delta's proffered reason for her termination is pretext and unworthy of credence. (*See supra,* § III(c); Doc. 51,

---

[1] Ortiz also asserts that the Report and Recommendation did not properly address her FMLA interference claim. However, as Delta correctly points out, FMLA claims predicated upon an employee's termination are construed as retaliation claims. *See Stephenson v. JLG Indus.*, No. 09-1643, 2011 WL 1304625, at *5 (M.D. Pa. Mar. 31, 2011). Regardless, the record does not support that Ortiz was denied FMLA benefits to which she was entitled, but rather that she was terminated for her suspected misuse of FMLA time.

pp. 46-47.) The Report and Recommendation therefore correctly finds that Ortiz's FMLA retaliation claim should be dismissed.

## II.   <u>CONCLUSION</u>

For the reasons set forth above, the court adopts the Report and Recommendation in full and grants Delta's motion for summary judgment. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: May 13, 2020

24